IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JONATHAN WITCZAK | ) | |
| | ) | |
| Plaintiff, | ) | CV-05-626-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**TIM WILBORN**
WILBORN & ASSOCIATES, P.C.
2020-C SW 8TH Avenue, PMB # 294
West Linn, Oregon 97068-4612

    Attorney for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
District of Oregon
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600
Portland, Oregon 97204

Page 1 - OPINION AND ORDER

**JOHANNA VANDERLEE**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104-7095

    Attorneys for defendant


KING, Judge:

## INTRODUCTION

Plaintiff Jonathan Witczak brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Commissioner's final decision is reversed and remanded for award of benefits.

## BACKGROUND

Witczak was born July 30, 1978, with cystic fibrosis, a fatal genetic disease that affects the lungs and digestive system. Tr. 252. He was 25 years old at the time of the hearing. Witczak has a high school diploma and has been enrolled in college and community college. He also has received certification as an EMT . Witczak worked some part time jobs, but the state agency determined he has never earned SGA level wages and has no past relevant work. Tr. 202, 204, 206, 208. Witczak alleges he is unable to work because of cystic fibrosis, a broken sternum, impaired lung function, digestive problems, and recurrent/persistent lung infection.

Page 2 - OPINION AND ORDER

Witczak applied for SSI on March 15, 2002. He had previously applied for SSI and DIB on July 23, 2001, alleging disability from January, 2000. For purposes of Title II DIB, Witczak was insured for disability benefits through June, 2001. He must show disability by that date to prevail on his Title II claim. There is no insured status requirement for Title XVI SSI. 42 U.S.C. §1382(a). SSI payments cannot be made retroactively. Accordingly, it is the protective filing date of the claimant's application March 15, 2002, rather than the alleged onset of disability, that determines the earliest date for which benefits can be paid. 20 CFR § 416.203. 416.501. SSR 83-20. The Administrative Law Judge (ALJ) held a hearing on Witczak's SSI claim on November 10, 2003. The ALJ reopened his DIB claim from July 23, 2001. Witczak, who was not represented by counsel, testified at the hearing as did an impartial medical expert, David Rullman, M.D. and vocational expert Gail Young. The ALJ found Witczak was not disabled on June 7, 2004, which is the final agency decision.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or. . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step three, there is a conclusive presumption that the

claimant is disabled if the Commissioner determines that the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 US at 140, 141; 20 CFR §§ 404.1520(d), 416.920(d). The criteria for these listed impairments, also called Listings, are enumerated in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. In step four, the claimant is not disabled if the Commissioner determines that the claimant retains the RFC to perform work he has done in the past. 20 CFR §§ 404.1520(e), 416.920(e). If the claimant cannot perform past work, the claim proceeds to the fifth step. At step five, the burden shifts to the Commissioner to demonstrate that there are a significant number of jobs in the national economy that the claimant can do given his RFC, and factors such as age, education, and work experience. *Yuckert*, 482 U.S. at 141-142, *Tackett v. Apfel*, 180 F.3d 1094, 1098-9 (9th Cir. 1999); 20 CFR §§ 404.1560-63. If the Commissioner meets this burden, the claimant is not disabled. 20 CFR §§ 404.1566, 416.966.

Witczak challenges the ALJ's determination at step three that his condition does not meet or equal an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Witczak asserts that his condition meets or equals Listing 3.04C. Witcazk also challenges the ALJ's finding at step four that he is able to perform past relevant work, asserting that he has no past relevant work. Finally,

Page 4 - OPINION AND ORDER

Witczak asserts that the ALJ erred in making no step five finding, which Witczak contends would be that he was unable to perform work which exists is significant numbers in the national economy.

## THE ALJ FINDINGS

The ALJ found that Witczak's cystic fibrosis is a severe impairment. The ALJ noted that:

> claimant has a history of sternum fracture. An October 2001 CT scan revealed posttraumatic ostoearthritic changes of the sternomanubrial joint (Exhibit 9F). He complains of pain and difficulty breathing due to the sternum fracture. However, there is no evidence of work-related functional limitations related to his history of sternum fracture.Tr. 35.

The ALJ found the sternum fracture was not a severe impairment.

The ALJ noted that Dr. Rullman, the impartial medical expert, testified that Witczak's cystic fibrosis met the criteria of Listing 3.04C. and Witczak has "suffered multiple bouts of increased infection and is on nebulizer therapy" Tr. 35. The ALJ noted further that Dr. John Witczak, the plaintiff's father, had "provided lifelong medical treatment for his son", including "antibiotic therapy for the claimant since infancy as well as chest percussion therapy, breathing treatments, monitoring with tests measuring respiratory function, and digestive enzymes." Tr. 35. Dr. Witczak's opinion was that the plaintiff's cystic fibrosis met the criteria of Listing 3.04C However, the ALJ found that Witczak's impairments did not meet or equal the requirements of a listed impairment. Tr. 36.

The ALJ proceeded to a determination of Witczak's RFC. The ALJ found that Witczak had no exertional limitations but should avoid even "moderate exposure to fumes, odors, dusts, gases, poor ventilation or other respiratory irritants." Tr. 37. The ALJ found that Witczak could return to his "past relevant work as a child care provider, store clerk, grocery checker, newspaper

deliverer, and home care provider, " and was not under a disability at any time through the date of the decision. Tr. 37.

## STANDARD OF REVIEW

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Id, Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039,1040. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000).

## DISCUSSION

Witczak asserts the ALJ improperly rejected the opinions of Drs. Rullman and Witczak and erred in finding that his cystic fibrosis did not meet or equal the criteria of Listing 3.04C. Witczak further asserts that the ALJ's finding at step four that he could return to past relevant

Page 6 - OPINION AND ORDER

work was improper because Witczak has no past relevant work. In addition, Witczak asserts that the ALJ ignored the opinion of the state agency medical expert regarding exertional limitations 's for Witczak's RFC and failed to consider medication side effects as part of the RFC. The ALJ failed to make a step five determination and Witczak argues that the Commissioner did not meet her burden of proving that he retains the ability to perform other work in the national economy.

### 1. Medical Background

Witczak was born with cystic fibrosis, a fatal genetic disease that affects the lungs and digestive system[1]. Tr. 252. He has been treated since infancy by his father, Dr. John Witczak, an orthopedic surgeon, who worked with his pulmonary specialists to monitor respiratory function, and prescribe various treatments, including long term antibiotic treatment, chest percussion, other breathing treatments, nebulizers, and digestive enzymes. Tr. 250, 252. Witczak has been seen by specialists at Oregon Health Sciences University (OHSU) since 1985. Tr. 250. The OHSU Cystic Fibrosis Pediatric Clinic recommended ciprofloxacin for significant pulmonary exacerbations. Tr. 294. His medical records indicate an August, 1999, pulmonary function test

---

[1] A defective gene causes the body to produce abnormally thick sticky mucus that clogs the lungs and leads to life-threatening lung infections; obstructs the pancreas, preventing digestive enzymes from reaching the intestines to help break down food; and, in some cases blocks the bile duct of the liver causing permanent liver damage. Although the average life expectancy of this progressive disease has increased from age 8 (in the 1960's) to age 30, adults with cystic fibrosis have additional health challenges, including osteoporosis. Pseudomonas bacteria is the leading cause of lung infection and death in patients with cystic fibrosis. The Gale Encyclopedia of Medicine, Vol. 2, 876-879, Donna Olendorf, et al, eds., (Gale 1999); Stanford University Medical Center & Lucile Packard Children's Hospital, http://www.lpch.org/DiseaseHealthInfo/HealthLibrary/respire/cystihub.html; Cystic Fibrosis Foundation, www.cff.org/about_cf/what_is_cf/; Boomer Esiason Foundation, www.esiason.org/cf/html.

showed a mild obstructive defect and a significant decline in all parameters from his usual baseline. Tr. 292.

At Witczak's yearly checkup at the OHSU Adult Cystic Fibrosis (CF) Clinic in October, 2000, he was rotating 3 weeks on and 3 weeks off the antibiotic ciprofloxacin[2]; his sputum cultures indicated he had 2+ Staphylococcus aureus that were resistant to penicillin, clindamycin and erthromycin, and 2 strains of Pseudomonas, both resistant to ciprofloxacin, but sensitive to tobramycin. Tr. 288. In October, 2001, Witczak was seen at a hospital in California following a fracture to his sternum and was noted as having posttraumatic ostoearthritic changes of the sternomanubrial joint. Tr. 365.

Witczak was seen by Dr. Chessnut, the Director of the OHSU Adult CF Clinic, in August 2002 for an exacerbation of bronchiectasis[3] associated with cystic fibrosis. He was found to have chronic colonization in the lungs with Pseudomonas with breeding of resistance to ciprofloxacin, malnutrition due to poor absorption, and a broken sternum. Witczak refused hospitalization and surgery was performed to implant a peripherally inserted central catheter (PICC) line for IV antibiotics. Tr. 281, 283.

---

[2] Ciprofloxacin may be effectively substituted for a course of IV antibiotics. National Institutes of Health Publication No. 97-4200, July 1997, Id at www.esiason.org/cfOutlook.html.

[3] Bronchiectasis is the syndrome of daily cough productive of large quantities of purulent sputum punctuated by episodes of fever and malaise. It is caused by scarred and dilated bronchii (from previous infection) that are mechanically disadvantaged in clearing secretions and that therefore collect mucous and bacteria, producing further bronchial damage. Bronchiectasis is the final pathological condition of cystic fibrosis. Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties, Vol. 5, 29, 37 (Richard M. Patterson, ed.), Michie Law Publishers, 4th Ed. 1997; Dorland's Illustrated Medical Dictionary, Twenty-ninth Edition, 244, (W.B. Saunders 2000).

Page 8 - OPINION AND ORDER

At the two week follow-up exam on August 19, 2002, Witczak complained of increased tiredness. His lung volume was below baseline but improved, he had mild pancreatic deficiency, and was to continue IV antibiotics for 3 weeks. Dr. Chesnutt prescribed the antimicrobial tobramycin (TOBI) to be inhaled directly into the lungs using a nebulizer after completion of the course of IV antibiotics. Although Witczak was concerned about the use of a nebulizer with (TOBI) due to side effects, including hearing loss, his prescriptions included TOBI, ergocalciferol, and ceftazidine. Tr. 281. After the PICC line was removed he began a rotating nebulizing regimen of 28 days on and 28 days off TOBI. Tr. 279. Two weeks later Witczak returned to the OHSU Adult CF Clinic for follow up and bone density tests and was prescribed continued exercise, and increase calcium and Vitamin D. Tr. 321.

Witczak returned to OHSU for follow up visits on September 30 and November 25, 2002. He continued to use the nebulizer with TOBI on a rotating basis, an albuterol inhaler, a flutter valve, guaifenesin, and nutritional supplements. Witczak was noted to have intermittent left lower lobe pleuritic chest pain, sternal pain, a decreased lung volume slightly below his base line level, mild pancreatic insufficiency, mild clubbing, cystic fibrosis with bronchiectasis and cystic fibrosis sinus disease. Tr. 316, 319.

Dr. Chesnutt examined Witczak on January 27, 2003, and reached the following assessment: cystic fibrosis with pulmonary involvement with bronchiectasis, with a history of exacerbation requiring IV and oral antibiotics; a new baseline lung volume that was decreased from his previous high six months previously; mild pancreatic insufficiency; chronic airway colonization with Stenotrophomonas maltophilia and Pseudomonas aeruginosa; history of abnormal liver tests; history of low vitamin level.

Dr. Chesnutt prescribed a continuation of chest physiotherapy including exercise, and a continuation of the nebulizing TOBI regimen. Tr. 312. Witczak's assessment at OHSU on April 28, 2003 noted chronic sternal pain; continued colonization of Peudomonas and Stenotrophomonas maltophilia; and that his abnormal liver function tests were presumed to be related to CF liver disease. Witczak was to continue with the same prescribed TOBI regimen and it was noted that his sputum was light green when finished with the 28 days on and got persistently darker on his off days. Tr. 310.

Dr. Chesnutt wrote a letter on June 5, 2003, stating that he had been Witczak's treating physician since 2000 and that a review of his records indicate that Witczak had "persistently grown at least two strains of Pseudomonas aeruginosa in sputum cultures since at least November, 1998. Because of this persistent growth of Pseudomonas aeruginosa in his sputum and a decline in his lung function, he was started on aerosolized (nebulizer) TOBI solution in September 2002 in an attempt to prevent further decline in lung function...to be used on a rotating basis (delivered twice a day, 28 days on, 28 days off) for the rest of his life." Tr. 366. Witczak returned to the OHSU Adult CF Clinic in early October, 2003 with chronic sternal pain, dark green sputum with bloody streaks, and night sweats. Although his health insurance had lapsed and he was unable to use the TOBI, he noted being on antibiotics over sixty times in the past year. Tr. 367. A 2004 self-report indicates he was again using the nebulizer with TOBI, as well as advair, pulmozyme, and other medications. Tr. 390.

**II.  Listing 3.04C**

Witczak asserts that the ALJ erred by finding that his condition did not meet or equal Listing 3.04C.  To meet the severity criteria of Listing 3.04C, a claimant must have a diagnosis of Cystic Fibrosis with:

> persistent pulmonary infection accompanied by superimposed, recurrent, symptomatic episodes of increased bacterial infection occurring at least once every 6 months and requiring intravenous or nebulization antimicrobial therapy.

20 C.F.R. Part 404, Subpart P, App. 1 § 3.04C.

As described previously in the medical background, Witczak has had persistent pulmonary infections since 1998.  Tr. 366.  The OHSU Cystic Fibrosis Pediatric Clinic recommended ciprofloxacin for significant pulmonary exacerbations.  Tr. 294.  The medical records indicate that Witczak was using ciprofloxacin on a rotating basis of 3 weeks on and 3 weeks off in October 2000.  Tr. 288.  Following his IV antibiotic therapy for a symptomatic episode of increased bacterial infection in August, 2002, Witczak was put on a regimen of nebulization therapy every 28 days to treat his recurrent increased bacterial infections.  The medical evidence led the ALJ to find that Witczak had "suffered multiple bouts of increased infection and is on nebulizer therapy."  Tr. 35.

Witczak's claim is also supported by the opinions of Dr. Witczak, who treated him from infancy, and Dr. Rullman, who studied the entire medical record and testified as an impartial medical expert.  Dr. Rullman testified that Witczak's condition met the criteria of Listing 3.04C.  The ALJ noted that Dr. Witczak, a treating physician, "also opines that the claimant's cystic fibrosis meets the criteria of 3.04C."  Tr. 35.   The ALJ rejected the opinions of Drs. Witczak and

Rullman in favor of the state agency consultants who concluded that Witczak's impairment did not meet or equal the criteria of any Listing. He found the state agency consultants' conclusion "more consistent with the treatment record." Tr. 35.

Contrary to the ALJ's statement, the state agency consultants' report did not accurately reflect the treatment record. For example, the state agency consultant found no history of recurrent antiobiotic use or nebulized treatment. Tr. 303. As the ALJ previously noted, Witczak has been on antibiotic therapy since childhood. Tr. 35. The state agency consultants also noted there were no medical source opinions in the file. Tr. 303, 308.

The ALJ cannot disregard Dr. Witczak's opinion, as a treating physician, without providing "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Dr. Witczak's opinion was supported by Dr. Rullman, the impartial medical expert. Dr. Rullman's opinion, as that of the nonexamining medical expert, constitutes substantial evidence. *Andrews v. Shalala* at 1041. The ALJ did not provide "specific and legitimate" reasons based on substantial evidence for rejecting Dr. Witcak's opinion.

Dr. Rullman, the impartial medical expert, testified at the hearing that Witczak's condition met the criteria of Listing 3.04C. Tr. 447. During his testimony, the ALJ stated it was not enough that Witczak's medical condition met the listing, the residual functioning capacity must also be assessed. Id. Dr. Rullman noted that Witczak was high functioning and that "in recent years, at least in his high school years, he had played hockey every day." Tr. 446. However, an assessment of residual functioning capacity occurs only if the claimant does **not** meet a listing. "If a claimant meets or equals a listed impairment he or she will be found disabled

Page 12 - OPINION AND ORDER

at this step without further inquiry." Tackett v. Apfel, 180 F3d. 1094, 1099, (9th Cir.1999); 20 C.F.R. §404.1520(d). The ALJ also questioned Dr. Rullman as to the date when Witczak met the criteria of Listing 3.04C, noting it could not be earlier than January 1, 2000. Dr. Rullman testified that Witczak met the listing in January 2000.

In rejecting the medical opinions of Drs. Rullman and Witczak, the ALJ cites the 2003 letter from Dr Chesnutt. Tr. 366. Dr. Chesnutt noted that Witczak's lung function had declined and he had persistent growths of Pseudomonas aeruginosa bacteria which led to the initiation of the TOBI nebulization treatments. The medical notes indicate that Witczak had been reluctant to begin the TOBI nebulization because of the side effects, which include potential hearing loss. The medical notes also stated that the pneumonia strains were breeding resistance to antibiotics. Tr. 281. Dr. Chesnutt stated that Witczak will need to use the TOBI nebulization for the rest of his life "in an attempt to prevent further decline in his lung function". Tr. 366.

The ALJ characterizes the nebulization treatments as "preventive" and thus not meeting Listing 3.04C. However, there is nothing in Dr. Chesnutt's letter that is inconsistent with the criteria of the listing. Dr. Rullman, the medical expert, examined the medical records and found that Witczak's condition met Listing 3.04C. The ALJ did not question Dr. Rullman about any perceived discrepancy between his opinion and the letter from Dr. Chesnutt. Witczak brought his father to the hearing to testify. Dr. Witczak is a treating physician who provided care "since infancy." Tr. 35. At the start of the hearing, the ALJ told Witczak his father was not going to be allowed to testify as a medical expert. Tr. 426. If there was a conflict in medical opinion, the ALJ should have attempted to resolve it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Witczak was not represented by counsel. When a claimant is not represented by counsel, the ALJ has "an independent duty to fully develop the record. He must be especially diligent in ensuring favorable as well as unfavorable facts and circumstances are elicited." *Higbee v. Sullivan*, 975 F. 2d 558, 561 (9th Cir. 1992). The ALJ had the opportunity to question Drs. Rullman and Witczak about the conclusions of the state agency consultants and did not do so. The medical opinions of Drs. Rullman and Witczak, are consistent with the letter from Dr. Chessnut and a finding that Witczak met Listing 3.04C.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F2d 759, 763 (9th Cir 1989). Improperly rejected evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman v. Apfel*, 211 F3d at 1178 quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1992). The third prong of this test is actually a subpart of the second. *See Harman*, 211 F.3d at 1178 n 7.

The ALJ erred in finding that Witczak's condition did not meet the criteria of Listing 3.04C. Meeting the criteria of a listing requires an award of benefits and no reason to reach any other allegations of error in the five step analysis. Dr. Rullman testified that Witczak met the Listing as of January, 2000.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for an award of benefits pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

Dated this ___20th___ of April, 2006.

        /s/ Garr M. King
        Garr M. King
        United States District Judge